OPINION
{¶ 1} Defendant-appellant Raymond Monroe Williams appeals his convictions and sentences entered by the Stark County Court of Common Pleas on two counts of domestic violence, felonies of the fifth degree, in violation of R.C. 2919.25(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 23, 2002, the Stark County Grand Jury indicted appellant on the aforementioned charges. Each count carried a prior domestic violence specification. The charges arose out of two incidents, one on July 8, 2002, and the other on August 20, 2002, involving the same victim, Margaret Roberg. Appellant entered a plea of not guilty to the indictment at his arraignment on September 27, 2002. The trial court scheduled the matter for jury trial on November 12, 2002. Prior to trial, appellant filed a motion for relief from prejudicial joinder, requesting the trial court sever the individual counts in the indictment and conduct separate trials on each. The trial court denied appellant's motion.
 {¶ 3} The matter came on for trial on November 12, 2002, however, Margaret Roberg did not appear despite being subpoenaed to do so. Upon the State's request, the trial court declared Roberg a material witness and issued a capias to ensure her appearance at trial.
 {¶ 4} The State called Roberg as its first witness. Roberg cooperated with the State during her testimony regarding the July 8, 2002 incident. When the State questioned her regarding the August 20, 2002 incident, Roberg testified appellant did not intentionally hit her, but rather she was injured when she and appellant fell to the floor during a scuffle. The State attempted to question Roberg about what she told the police on the day following the incident. Defense counsel objected on hearsay grounds, and the trial court sustained the objection. After a sidebar conference, the trial court declared Roberg a court's witness and allowed both parties to cross-examine her. When the State questioned Robert about her statement, she testified she never read what the officer had written, but only signed the form. Roberg also told defense counsel she did not review the form given to her by the police officer, but merely signed it. Defense counsel asked Roberg if she had ever "said anything different then what you're saying in court here today about what happened?" to which Roberg responded, "Not as far as I know." Tr. at 155-156.
 {¶ 5} The State also called Officers Gregory Bray and Jo Ellen Pfeil, both of the Canton Police Department, as witnesses. Officer Bray was on duty on July 8, 2002, and responded to Roberg's 911 call. Officer Pfeil testified she responded to Roberg's home on August 21, 2002, after a neighbor reported concerns about Roberg's welfare. Officer Pfeil testified she asked Roberg the cause of the injuries on her face. Defense counsel objected. Following a sidebar conference, the trial court overruled the objection and permitted the State to question Officer Pfeil about her conversation with Roberg in order to impeach the victim. Following Officer Pfeil's testimony, the State rested. Appellant did not present any evidence on his own behalf.
 {¶ 6} After hearing all the evidence and deliberations, the jury found appellant guilty of both counts of felony domestic violence. The trial court sentenced appellant to a term of incarceration of twelve months on each count, and ordered the sentences be served consecutively.
 {¶ 7} It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 {¶ 8} "I. The Trial Court Abused Its Discretion In Permitting The Introduction Of Inadmissible Hearsay Statements In Violation Of Evid. R. 613 And Appellant's Constitutional Right To Confrontation.
 {¶ 9} "II. The Trial Court Abused Its Discretion In Overruling Appellant's Motion For Relief From Prejudicial Joinder.
 {¶ 10} "III. The Trial Court Committed Prejudicial Error And Deprived Appellant Of Due Process Of Law Guaranteed By The United States And Ohio Constitutions By Finding Appellant Guilty Of Domestic Violence, Against The Manifest Weight And Sufficiency Of The Evidence, Where The State Failed To Offer Sufficient Evidence To Prove Each And Every Element Of The Charged Offense Beyond A Reasonable Doubt.
 {¶ 11} "IV. The Imposition Of Individual Maximum Sentences And An Aggregate Consecutive Maximum Sentence Is Against The Mainfest [sic] Weight Of The Evidence And Contrary To Law.
 {¶ 12} "V. The Cumulative Effect Of Errors During The Trial Resulted Appellant Being Denied A Fair Trial."
 I {¶ 13} In his first assignment of error, appellant maintains the trial court abused its discretion in admitting hearsay statements in violation of Evid.R. 613 and appellant's constitutional right to confrontation.
 {¶ 14} Pursuant to Evid.R. 614, the trial court declared Roberg the court's witness and permitted both parties to cross-examine her. Evid.R. 616, which sets forth the methods of impeachment on cross-examination, addresses the use of "specific contradiction" and provides:
 {¶ 15} "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
 {¶ 16} "(1) Permitted by Evid.R. * * * 613,* * *"
 {¶ 17} Evid.R. 613, which permits a party to examine a witness regarding any prior inconsistent statements, provides for the use of extrinsic evidence of such statements. Specifically, Evid.R. 613(C) provides:
 {¶ 18} "(A) * * * In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
 {¶ 19} "(B) * * * Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 20} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 21} "(2) The subject matter of the statement is one of the following:
 {¶ 22} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 23} "(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B) or 706;
 {¶ 24} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.
 {¶ 25} "(C)* * * During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of that prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements in Evid.R. 613(B)(2)."
 {¶ 26} In order to introduce extrinsic evidence of a prior inconsistent statement, a foundation must be established through direct or cross-examination in which:
 {¶ 27} "(1) the witness is presented with the former statement, (2) the witness is asked whether he made the statement, (3) the witness is given an opportunity to admit, deny, or explain the statement, and (4) the opposing party is given an opportunity to interrogate the witness concerning the inconsistent statement." State vs. Keith (1997),79 Ohio St.3d 514, 525.
 {¶ 28} During the State's cross-examination of Roberg, she testified the August 20, 2002 incident was an accident. The State then attempted to lay a foundation for the introduction of extrinsic evidence of Roberg's statement to Officer Pfeil on August 21, 2002.
 {¶ 29} "PROSECUTOR: Q. Ms. Roberg, isn't it true that you told Officer Joe Ellen Pfeil on August 20, 2002, that the Defendant had hit you?
 {¶ 30} "DEFENSE COUNSEL: Objection, I'm sorry.
 {¶ 31} "PROSECUTOR: Had hit you about the face and the body?
 {¶ 32} "DEFENSE COUNSEL: Objection.
 {¶ 33} "THE WITNESS: I don't remember.
 {¶ 34} "THE COURT: Hold on. Objection sustained. Approach, please. Jury is instructed to disregard the last question." Tr. at 139.
 {¶ 35} We find the State's question was proper to establish a foundation for Roberg's prior inconsistent statement. By defense counsel's objecting to the question, the State was prohibited from laying such a foundation; therefore, appellant cannot now, under the doctrine of invited error, claim the trial court erroneously admitted the inconsistent statement for impeachment purposes.
 {¶ 36} Appellant's first assignment of error is overruled.
 II {¶ 37} In his second assignment of error, appellant contends the trial court abused its discretion in overruling his motion for relief from prejudicial joinder pursuant to Crim.R. 14.
 {¶ 38} Crim.R. 14 provides:
 {¶ 39} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 40} "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." State v. Torres (1981),66 Ohio St.2d 340.
 {¶ 41} "A prosecutor can use two methods to negate such claims of prejudice. Under the first method, the "other acts" test, the state argues that it could have introduced evidence of the 1983 crimes under the "other acts" portion of Evid.R. 404(B), if the 1983 and 1986 offenses had been severed for trial. Citation omitted. Under the second method, the "joinder" test, the state is not required to meet the stricter "other acts" admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct. Citations omitted. Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as "other acts" under Evid.R. 404(B)." State v. Lott
(1990), 51 Ohio St.3d 160,164.
 {¶ 42} We find the trial court did not abuse its discretion in overruling appellant's motion for relief as the evidence in the instant action was simple and direct. Appellant was indicted on two counts of domestic violence, each count involving the same victim and the same location. Two police officers testified to his/her investigation of the respective incidents. Furthermore, the trial court presented the jury with the following cautionary instruction:
 {¶ 43} "The charges set forth in each count in the indictment [constitute] a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to the other count."
 {¶ 44} We find appellant has failed to establish the trial court abused its discretion by denying his motion to sever.
 {¶ 45} Appellant's second assignment of error is overruled.
 III {¶ 46} In his third assignment of error, appellant raises sufficiency and manifest weight of the evidence claims.
 {¶ 47} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: AAn appellate court=s function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant=s guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 48} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant=s convictions were based upon insufficient evidence.
 {¶ 49} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 50} With respect to count one, which involved the July 8, 2002 incident, appellant asserts the State failed to prove beyond a reasonable doubt Roberg was a family or household member, which is an essential element of the crime charged.
 {¶ 51} R.C. 2919.25(F) provides:
 {¶ 52} "(1) "Family or household member" means any of the following:
 {¶ 53} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 54} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 55} "(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 56} At trial, Roberg testified she, appellant, and her daughter lived on Smith Avenue in Canton, Ohio, on July 8, 2002. Roberg further testified she and appellant were legally married on July 24, 2002, although prior to that they had been together for seven years. We find this testimony is sufficient to establish Roberg was appellant's family member at the time of the July 8, 2002 offense, and the jury's finding as such is not against the manifest weight of the evidence.
 {¶ 57} With respect to the August 20th incident, appellant argues the State failed to prove he had the requisite mens rea to cause physical harm to Roberg. Roberg testified on the evening of August 20, 2002, she and appellant both had been drinking heavily and appellant unintentionally fell on her, causing her to sustain injuries. Officer Pfeil, who investigated the incident the following morning, testified she observed Roberg with a swollen face, scab on the corner of her mouth, and bruises on her arm. Roberg's credibility as to how her injuries were sustained was put in issue when she told the officer appellant had punched her in the face and chest area. We find the evidence was sufficient to inferentially establish appellant knowingly caused physical harm to Roberg on August 20th, and the jury's determination as such was not against the manifest weight of the evidence.
 {¶ 58} Appellant's third assignment of error is overruled.
 IV {¶ 59} In his fourth assignment of error, appellant maintains the trial court erred in imposing maximum, consecutive sentences upon him. We disagree.
 {¶ 60} The imposition of a maximum sentence is governed by R.C.2929.14(C), which states, in relevant part:
 {¶ 61} "(C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 62} The imposition of consecutive sentences is governed by R.C. 2929.14(E), which states, in relevant part:
 {¶ 63} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 64} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 65} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 66} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 67} R.C. 2929.19, the statute which governs the sentencing hearing, also requires the trial court state its reasons to support the finding(s) used to justify the imposition of a maximum or consecutive sentences. These "reasons" are an additional element to the "findings" requirement of R.C. 2929.14(C). State v. Edmonson (1999),86 Ohio St.3d 324.
 {¶ 68} With this authority in mind, we turn our attention to the record before us.
 {¶ 69} At the sentencing hearing, the trial court addressed appellant as follows:
 {¶ 70} "THE COURT: [T]he Court has considered the record, the oral statements, the victim impact statement, as well as the principles and purposes of sentencing under Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12. The Court finds pursuant to Revised Code 2929.13(B) that there was physical harm to a person; the Court further finds that the Defendant is not amenable to community control and that prison is consistent with the purposes of Revised Code 2929.11.
 {¶ 71} "The Court finds pursuant to Revised Code 2929.14(B) that the shortest prison term possible would demean the seriousness of the offenses and will not adequately protect the public and therefore, the Court is going to impose a greater term.
 {¶ 72} "Mr. Williams, have you — did you listen to the prosecutor as she reviewed all of your many convictions?
 {¶ 73} "THE DEFENDANT: Yes Your Honor.
 {¶ 74} "THE COURT: Related to domestic violence?
 {¶ 75} "THE DEFENDANT: Right.
 {¶ 76} "THE COURT: Do you think that is a way of life?
 {¶ 77} "THE DEFENDANT: No, I think it was a way of two people using alcohol and drugs and getting blown out of proportion to be a domestic when the call is made. There was never any battering that went on in these instances. The first one that I can recall, Your Honor — —
 {¶ 78} "THE COURT: What's your definition of battering?
 {¶ 79} "THE DEFENDANT: Physically.
 {¶ 80} "THE COURT: Does something like a bone have to be broken to have battering?
 {¶ 81} "THE DEFENDANT: No, Your Honor.
 {¶ 82} "THE COURT: In your mind?
 {¶ 83} "THE DEFENDANT: On the first as I was saying domestic charge that I got, we were coming from some tavern downtown. She wanted to drive. And she was unable to drive. So she got out of the car.
 {¶ 84} "We pulled over and I came around to drive and she sat in the middle of the street. So I picked her up to get her into the car * * * And she had a couple of bruises on her arm where I picked her up from the street. It was just a lot of simple things like that. They ended up domestic violence.
 {¶ 85} "Couple of them were busted to disorderly conduct. One of them I pled guilty instead so I could get back to my family and my job.
 {¶ 86} "THE COURT: It's just a matter of convenience that you decided to plead guilty?
 {¶ 87} "THE DEFENDANT: Yes, because I didn't want to fight it and possibly lose it, but she was not battered in any way in those instances.
 {¶ 88} "THE COURT: Okay. The Court in reviewing the factors which it's required to consider under 2929.12 finds that this is more serious because of the Defendant's relationship with the victim and that that relationship facilitated the offense, they were living together relative to the first offense, and relative to the second offense in this case they were actually husband and wife.
 {¶ 89} "The Court finds recidivism is more likely in that the Defendant has no genuine remorse, has shown no genuine remorse. He is blaming drugs and alcohol for this situation. He has had the opportunity to have treatment in the past, claims that it has been helpful, yet continues to engage in conduct which is unacceptable.
 {¶ 90} "The Court is going to impose the maximum term in each of these cases of 12 months in prison finding pursuant to Revised Code 2929.14
(C), noting particularly the Defendant poses the greatest likelihood of recidivism again trying to minimize and not take responsibility for his conduct.
 {¶ 91} "The sentences are to be served consecutively to one another being necessary to fulfill the purposes of Revised Code 2929.11
and not disproportionate to the seriousness of the Defendant's conduct or the danger the Defendant poses.
 {¶ 92} "The Court further finds that the Defendant's criminal history requires consecutive sentences, particularly his criminal history related to domestic violence. I think the count was is this six and seven related charges to domestic violence?" Tr. of Sentencing Hearing at 11-16.
 {¶ 93} Further, in its November 25, 2002 Judgment Entry, the trial court stated:
 {¶ 94} "The Court has considered the record, oral statements, any victim impact statement and pre-sentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised. Code Section2929.11, and has balanced the seriousness and recidivism factors Ohio Revised Code Section 2929.12.
 {¶ 95} "The Court finds that the defendant has been convicted of Domestic Violence, 2 cts., a violation of Revised Code Section2919.25(A), felony of the fifth (5 th) degree subject to division (B) of section 2929.13 of the Ohio Revised Code.
 {¶ 96} "The Court has considered the factors under Revised Code section 2929.13(B) and finds the following: * * *
 {¶ 97} "1. physical harm to a person;
 {¶ 98} "The Court finds pursuant to Revised Code Section 2929.14(B) that the shortest prison term will demean the seriousness of the defendant's conduct and the shortest prison term will not adequately protect the public from future crime by the defendant or others.
 {¶ 99} "The Court finds for the reasons stated on the record pursuant to Revised Code Section 2929.14(C) that the defendant has committed the worst form of the offense and the defendant poses the greatest likelihood or recidivism;
 {¶ 100} "Pursuant to Revised Code Section 2929.14(E) the Count finds for the reasons stated on the record that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public form future crime by the defendant.
 {¶ 101} "Therefore, the sentences are to be served consecutively.
 {¶ 102} "For reasons stated on the record, and after consideration of the factors under Revised Code 2929.12, the Court also finds that prison is consistent with the purposes of Revised Code section 2929.11 and the defendant is not amenable to an available community control sanction."
 {¶ 103} We find the trial court made the requisite findings for the imposition of a sentence greater than the minimum term pursuant to R.C. 2929.14(B), and the trial court's decision to impose the maximum prison term for each count was supported by the appropriate findings and reasons. We also find the trial court made the requisite findings under R.C. 2929.14(B)(4) and stated all of the required reasons for the imposition of consecutive sentences. Accordingly, we find the trial court did not err in imposing maximum, consecutive sentences.
 {¶ 104} Appellant's fourth assignment of error is overruled.
 V {¶ 105} In is final assignment of error, appellant asserts he was denied a fair trial due to the cumulative effect of the errors occurring during trial.
 {¶ 106} Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his constitutional rights, even though such errors, standing alone, are not prejudicial. State v. DeMarco (1987), 31 Ohio St.3d 191, 196-197.
 {¶ 107} Having found no errors, we find appellant was not denied a fair trial.
 {¶ 108} Appellant's fifth assignment of error is overruled.
 {¶ 109} The convictions and sentences entered by the Stark County Court of Common Pleas are affirmed.